**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| v. | ) NO. 5:08-CR-00095-GFVT-MAS-1 |
| **ANTOINE GREGORY HILL,** | ) |
| Defendant. | ) |

**REPORT & RECOMMENDATION**

Defendant Antoine Gregory Hill ("Hill") is before the Court on alleged violations of his term of supervised release. District Judge Gregory F. Van Tatenhove referred this matter to the undersigned for a report and recommendation of a sentence. Considering Hill's original conviction, the statutory factors, his personal history, and the fact that this violation includes absconding from supervision for approximately 19 months, the Court recommends Judge Van Tatenhove revoke Hill's supervision, sentence him to eight months' imprisonment, and impose no further term of supervision to follow. The Court makes this recommendation after careful review of the record and concluding that the original sentencing judge, as well as the United States Probation Office, has utilized all of the tools available to the Court to assist Hill in achieving success on supervision, and no further supervision will prove fruitful for him or the community.

## I.  CASE BACKGROUND

On September 2, 2008, United States District Judge Joseph M. Hood sentenced Hill to a 140-month term of imprisonment followed by a 5-year term of supervised release upon his plea of guilty to possession with intent to distribute cocaine base, possession of a firearm in furtherance of drug trafficking, and escape.  [DE 45].

## II.  SUPERVISED RELEASE HISTORY

### A. PRIOR VIOLATIONS

Hill's original term of supervision began on August 20, 2018.  [Supervised Release Violation Report dated August 30, 2018, "August 2018 Report"].  Nine days later, on August 29, 2018, Hill was arrested after his probation officer and law enforcement located cocaine, marijuana, ecstasy, two firearms, and a large sum of money in his residence.  [August 2018 Report, p. 2].  In addition to the violation related to those items, two convicted felons in possession of controlled substances were also at the residence when the search occurred, resulting in a second violation.  [August 2018 Report, p. 2].  Finally, USPO learned Hill was renting another apartment and searched it on August 30, 2018, finding a loaded firearm resulting in a third violation.  [August 2018 Report, p. 2].  Ultimately, on August 5, 2019, after his state case had been resolved, Hill stipulated to the third violation and the United States did not pursue the first two.  [DE 79].  Judge Hood sentenced Hill to a term of time served (resulting in slightly less than one year imprisonment at that point) and continued him on the remainder of his term of supervised release.  [DE 79 and 80].

Hill continued on supervision for nearly twenty-two months without incident, until he began missing his substance use treatment sessions in June 2021. [Supervised Release Violation Report dated August 19, 2021, "August 2021 Report"]. By August 19, 2021, USPO reported that the officer had been unable to contact Hill "despite numerous attempts." [August 2021 Report, p. 2]. On August 30, 2021, Hill stipulated to the violation. [DE 89]. Judge Hood once again continued him on his previous term of supervision, but with the modification that Hill had to participate in and complete a dual diagnosis inpatient treatment program. [DE 89].

### B. THE INSTANT VIOLATIONS

Per USPO and Hill, when he arrived at the designated treatment facility, the treatment facility did not accept Hill for treatment because the facility could not provide the level or type of treatment Hill required (through no fault of Hill). Upon learning of this complication, USPO directed Hill to report back to the USPO office the following business day, October 1, 2021. [Supervised Release Violation Report dated June 7, 2023, "June 2023 Report"]. The Court had also scheduled a status conference on October 4, 2021. Hill failed to appear at both. The Court issued a warrant for Hill's arrest. [DE 92].

Hill was eventually arrested on that warrant on May 28, 2023. During the arrest, Hill pushed the officer and fled on foot. He was captured and found with alleged drug paraphernalia on his person. [June 2023 Report]. Hill was cited by Lexington Metro Police for his conduct during the arrest. Thus, his instant violations consist of (1) failing to follow the instructions of the probation officer by not returning

to the probation office or court as described above; and (2) committing another federal, state, or local crime.

On June 9, 2023, the Court conducted an initial appearance on the supervised released violation pursuant to Fed. R. Crim. P. 32.1. At the hearing, the Court advised Hill of his constitutional rights, including his right to a preliminary hearing. Hill waived his right to a preliminary hearing but requested release from custody pending the final hearing. The Court heard arguments of counsel regarding interim detention and determined continued detention was appropriate. [DE 96].

At the final hearing on June 20, 2023, Hill indicted he wished to stipulate to the two violations at issue. The Court found him competent to enter a knowing, voluntary, and intelligent stipulation the charged violations. Thus, the Court found the United States established the violations pursuant to 18 U.S.C. § 3583(e).

Both violations are Grade C violations. Hill's criminal history at the time of sentencing was a Category V. The parties agree that under these circumstances, the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") propose a sentence of 7 to 13 months, with a statutory maximum of 60 months. See 18 U.S.C. § 3583(e)(3). If the Court revokes Hill's supervision, there is maximum term of supervised release that can be reimposed, pursuant to 18 U.S.C. § 3583(h).

### III. ANALYSIS

The Court has evaluated the entire record and considered the arguments presented at the final hearing, the record concerning Hill's violations, the presentence investigation report, and the factors set forth in 18 U.S.C. § 3583(e).

In recommending a sentence, the Court must consider the nature and circumstances of Hill's original conviction, the statutory factors in 18 U.S.C. § 3553 incorporated into § 3583(e), and the Sentencing Guidelines range. *See also United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011). Hill's original conviction was for possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and escape. [DE 45]. According to his presentence investigation report, the escape charge was the result of Hill stealing another inmate's identity and essentially talking his way out of the detention center after his initial federal arrest. [Presentence Investigation Report, p. 5]. And, to further prove Hill's proclivity to escape and abscond, prior to that initial federal arrest (from which he escaped), Hill (then on state bond for related charges) fled the scene of a traffic stop and avoided apprehension for several weeks. [Presentence Investigation Report, p. 5]. Hill's presentence investigation report from 2008, when Hill was 22 years old, reflected a criminal history of numerous drug possession and traffic offenses.

The District Court imposed a 140-month term of imprisonment followed by a 5-year term of supervised release at Hill's original sentencing. [DE 45]. The term of imprisonment was at the lowest end of the Guidelines range of 140 to 175 months'. *See* U.S.S.G. 7B1.4 n.4 (counseling that when there was a downward departure at sentencing, "an upward departure may be warranted" on revocation); *see* 18 U.S.C. § 3553(a)(6) (considering "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

Moreover, once he violated his release conditions in 2021, he was given another opportunity to be released into inpatient treatment (rather than have his supervision revoked). However, as noted, Hill did not follow the instructions of the Court and USPO, but rather, absconded.

Hill presented the testimony of his mother and proffer at the hearing to explain that he has not been engaging in dangerous or violent conduct during the time that his has been "out of touch" with USPO, and to explain that he has been mentally unwell. Hill's mother testified that she believed USPO was supposed to follow up with her son, and neither she nor her son followed up with USPO. The testimony and proffer stressed that both Hill's long period of incarceration and the recent death of Hill's sister negatively impacted Hill's mental health, to the extent that he engages in odd behaviors like unscrewing light bulbs around the house. Hill stressed that between 2019 and 2023, he had not incurred any new criminal charges. Ultimately, Hill requested a downward departure sentence of time served and that he be permitted to serve out the rest of his term of supervision (approximately two months). This request is far below the Guidelines range of 7 to 13 months. Hill also allocuted to the Court, expressing his desire to get his life back on track.

The United States countered that revocation with a Guidelines range sentence was appropriate in this circumstance. The United States suggested that Hill's odd behavior could be the result of a mental health issue or could be drug use, based on the drug paraphernalia he was found with during his arrest in May 2023. The United States stressed that Hill had not been in contact with USPO for an extended period—

nineteen months—and there was no reason to think that he would be more successful on supervision this time.

The Court agrees with the United States. The Court cannot ignore that Hill's underlying charge includes an escape, and the conduct leading up to the federal charge included *two* escapes. He missed a court date and a time to meet with his probation officer, and never called or came to the probation office to see what steps he needed to do to get back on track.

Hill's first arrest on supervision came nine days after he was released from prison. When he was released on those state charges a year later, he was sentenced to time served. Although Hill would like to paint a picture of compliance between 2019 and 2023 because he had no criminal charges and no positive drug screens, the reality is that during this time, Hill had another violation for failure to attend treatment, Judge Hood attempted get Hill into another treatment facility rather than revoke him, and Hill chose to disappear for nineteen months—which cannot be considered a period of compliance with the terms of his supervision.

The Court agrees with Hill that he needs substance use treatment and mental health treatment and he has not consistently had these treatments over the past few years. Hill has a history of using drugs, perhaps has relapsed recently, and has spent most of his adult life incarcerated. At this point, however, the Court has exhausted its limited options. Disappointedly, neither the Court nor USPO have access to the type of mental health services that Hill needs, as is evident from Hill being turned

away from substance use disorder treatment due to the severity of his mental health issues.

Most importantly, the Court has no confidence that Hill will comply with any terms of supervision it imposes on Hill. Hill has repeatedly demonstrated his willingness to flee from law enforcement, refuse to show up for his scheduled treatment appointments, and now, to abscond from supervision for nearly two years. Continuing to fight this battle, with no appropriate resources to assist Hill, will not only keep Hill in a loop of supervision-violation-revocation-incarceration-supervision, but will endanger the community during any time he may disappear again. The Court is unconvinced that another term of supervision will be successful or serve any of the purposes listed in § 3553 as incorporated in § 3583.

Considering all issues and factors discussed above, the Court recommends the District Court revoke Hill's term of supervision and sentence him to eight months' imprisonment with no supervision to follow. This is the lower end of the Guidelines range, which reflects the fact that the actual violation at issue is a Grade C, far less serious than a Grade A or B, and less serious than some of Hill's 2019 violation. However, this recommendation also reflects the fact that Hill has repeatedly violated his supervision—and the Court's trust—in the past several years. This recommendation also reflects that the Court has repeatedly offered leniency to Hill, both at this original sentencing and along the way during his supervised release journey. The Court finds this sentence is sufficient but not greater than necessary to punish Hill's conduct in violating his supervised release, protect the public from

further crimes, and provide him with an opportunity to have a fresh start upon his release. The Court recommends the District Judge consider making recommendations to the Bureau of Prisons in the judgment regarding substance use treatment program participation if Hill is eligible.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, the Court **RECOMMENDS**:

(1) Hill be found guilty of both violations;

(2) Hill's supervised release be **REVOKED**;

(3) Eight (8) months of incarceration; and

(4) No supervision to follow.

Hill preserved his right of allocution. Absent a waiver of allocation, this matter will be placed on Judge Van Tatenhove's docket for an allocution hearing upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Entered this 18th day of July, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

Case: 5:08-cr-00095-GFVT-MAS   Doc #: 101   Filed: 07/18/23   Page: 10 of 10 - Page ID#: 208